UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
                                      :
T.G., as Natural Guardian             :
o/b/o M.R.G., an Infant,              :          13 Civ. 412 (DLC)
                                      :
                 Plaintiff,           :          OPINION AND ORDER
                                      :
          -v-                         :
                                      :
CAROLYN W. COLVIN, as Acting          :
Commissioner of Social Security,      :
                                      :
                 Defendant.           :
                                      :
------------------------------------- X

APPEARANCES

For the Plaintiff:

Michael D. Hampden
Partnership for Children's Rights
271 Madison Avenue, 17th Floor
New York, NY 10016


For the Defendant:

Susan C. Branagan
United States Attorney for the Southern District of New York
86 Chambers Street, 3rd Floor
New York, NY 10007


DENISE COTE, District Judge:

     Plaintiff T.G. brings this action on behalf of her son,

M.R.G., to obtain judicial review, pursuant to 42 U.S.C.

§ 405(g), of a final decision of the Commissioner of Social

Security ("Commissioner") denying her application for
Supplemental Security Income ("SSI") benefits under Title XVI of
the Social Security Act ("SSA").  Plaintiff requests that this
matter be remanded, but with a qualification to limit the scope
of the remand to exclude a favorable factual determination made
the Administrative Law Judge ("ALJ").  The Commissioner supports
the plaintiff's request for a remand, but without any limitation
in scope.  For the following reasons, the case is remanded in
full.

BACKGROUND

    The following discussion is based on the administrative
record.  M.R.G. is a male child born on June 10, 2006.  On
January 10, 2010, plaintiff filed an application for SSI
benefits on behalf of M.R.G. claiming that, as of November 2009,
his hyperactivity and speech impairment rendered him disabled.
On June 1, 2010, the application was denied.  Plaintiff
requested a hearing before an ALJ.

    Plaintiff, M.R.G., and counsel were present for the
hearing, which lasted fourteen minutes, from 9:40 a.m. until
9:54 a.m. on July 12, 2011.  Plaintiff testified, describing
M.R.G.'s problems as "constantly moving, hitting teachers, the
other students, acting out, kicking and screaming, throwing

2

tantrums, throwing his shoes, taking off clothes."   In describing how M.R.G. differed from other five-year old boys, plaintiff stated that "he needs supervision with everything" and that she cannot "have him do anything."   In response to questions from the ALJ, she confirmed that M.R.G. was in a "structured school setting" and that he knew his alphabet and letters.  She explained that he did not get along well with other kids because "he likes to hit and . . . misbehave, he doesn't like to share, he grabs toys from the other children" and so other children "are no longer allowed to come to the house."  When asked if M.R.G. was on any medication, plaintiff's counsel responded:

> Attorney: There is no way though at this point.
> Greenwich Hill is working him up for treatment.
>
> ALJ: Oh.
>
> Attorney: And he has already been through an
> examination by a pediatric neurologist and now he has
> to go to be examined by a pediatric psychiatrist and
> unfortunately they are busy and the next appointment
> is now July 18th.  There is no way to know if he is
> going to be on medication, at this point.

In response to questions from her counsel, plaintiff confirmed that M.R.G. has been destructive in the house and that he cannot go to the bathroom by himself.  Although M.R.G. was present, the ALJ did not ask any questions of him, noting only at the end of the hearing that "the child has been very restless during the

hearing for sure."

The evidentiary record before the ALJ -- which consisted of many evaluations of M.R.G., both educational and medical -- was lengthy and need not be addressed in detail.  While most, if not all, of the evaluations recognized the existence of M.R.G.'s hyperactivity, aggression, and language delays, there was not a clear consensus on the degree to which they were limitations on his functioning.

On August 11, 2011, the ALJ issued his decision, concluding that M.R.G. was not disabled under the SSA.  The critical legal issue in M.R.G.'s circumstances was whether he had a "marked" or "extreme" limitation with respect to his functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1)(i)-(vi).  An individual is "disabled" under the SSA if he has either an extreme limitation in any one domain or a marked limitation in at least two domains.[1]  The ALJ found that

---

[1] SSA regulations define a "marked limitation" as follows:
    (i) We will find that you have a "marked" limitation
    in a domain when your impairment(s) interferes
    seriously with your ability to independently initiate,
    sustain, or complete activities.  Your day-to-day
    functioning may be seriously limited when your
    impairment(s) limits only one activity or when the

M.R.G. had a marked limitation with respect to the third domain

_____

interactive and cumulative effects of your
impairment(s) limit several activities.  "Marked"
limitation also means a limitation that is "more than
moderate" but "less than extreme."  It is the
equivalent of the functioning we would expect to find
on standardized testing with scores that are at least
two, but less than three, standard deviations below
the mean.
(ii) If you have not attained age 3, we will generally
find that you have a "marked" limitation if you are
functioning at a level that is more than one-half but
not more than two-thirds of your chronological age
when there are no standard scores from standardized
tests in your case record.
(iii) If you are a child of any age (birth to the
attainment of age 18), we will find that you have a
"marked" limitation when you have a valid score that
is two standard deviations or more below the mean, but
less than three standard deviations, on a
comprehensive standardized test designed to measure
ability or functioning in that domain, and your day-
to-day functioning in domain-related activities is
consistent with that score.  (See paragraph (e)(4) of
this section.)
(iv) For the sixth domain of functioning, "Health and
physical well-being," we may also consider you to have
a "marked" limitation if you are frequently ill
because of your impairment(s) or have frequent
exacerbations of your impairment(s) that result in
significant, documented symptoms or signs.  For
purposes of this domain, "frequent means that you have
episodes of illness or exacerbations that occur on an
average of 3 times a year, or once every 4 months,
each lasting 2 weeks or more.  We may also find that
you have a "marked" limitation if you have episodes
that occur more often than 3 times in a year or once
every 4 months but do not last for 2 weeks, or occur
less often than an average of 3 times a year or once
every 4 months but last longer than 2 weeks, if the
overall effect (based on the length of the episode(s)
or its frequency) is equivalent in severity.
20 C.F.R. § 416.926a(e)(2).

(interacting and relating with others) but a less-than-marked limitation with respect to the first and second domains.

Only those findings relevant to this Opinion are summarized here. As to the first domain (acquiring and using information), the ALJ noted M.R.G.'s behavioral difficulties, distractibility, and short attention span, but concluded that there was no marked limitation as follows:

> However, he is doing well. He understands his teacher. He is able to complete puzzles and identify letters. His mother indicates that he knows his alphabet and numbers. He can recite numbers, identify most colors and shapes, and knows his age and birthday.

(Citation omitted.) As to the second domain (attending and completing tasks), the ALJ noted M.R.G.'s lack of focus and need for supervision but concluded that there was no marked limitation as follows:

> However, he is able to understand his teachers, and complete puzzles. He can complete his homework, do chores, play with toys, read, color and draw, and use a computer. Dr. Depaola indicates that the claimant appears to have a normal attention span for his age.

(Citation omitted.) As to the third domain (interacting and relating with others), the ALJ found as follows:

> The claimant is able to communicate adequately. His mother indicates that the claimant had problems talking clearly only some of the time, and that his speech is not understandable only some of the time. The claimant has difficulty interacting with peers and adults. Testing has shown average adaptive behavior

skills and moderately low socialization skills.  His
teacher indicates that he is getting better at
regulating his emotions.  His mother indicates that he
shows affection towards other children and toward his
parents, shares toys, and plays games with others.

(Citation omitted.)  Thus the ALJ concluded that he had a marked

limitation with respect to this third domain.  The ALJ further

concluded, and it is not disputed here, that M.R.G. had no

limitation with respect to the remaining three domains.

Earlier in the opinion, the ALJ addressed the medical

evidence with respect to M.R.G.'s speech and language delays and

his hyperactivity.  With regard to the former, he found that

M.R.G. "has maintained the ability to communicate adequately."

With regard to the latter, he found that M.R.G. "is able to

function adequately and control his aggression with assistance."

Citing plaintiff's testimony, the ALJ also "note[d] that

[M.R.G.] is not taking any medication for his ADHD."  Finally,

the ALJ found that the plaintiff was not credible "to the extent

[her testimony was] inconsistent with the[se] finding[s]."

After the Appeals Council denied plaintiff's request for

review on November 30, 2012, she filed this action on January

17, 2013.  On July 23, plaintiff filed a motion to remand, with

a request to limit the scope of the remand.  After multiple

extensions (some of which were granted by the Court upon being

advised that the Commissioner was considering supporting the

remand), on December 12 the Commissioner filed a cross-motion to remand, without any limit on the scope of the remand.  The motions were fully submitted as of January 14, 2014.

DISCUSSION

In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g) (sentence four).  The Court may set aside a determination of the ALJ only if it is not supported by substantial evidence or if it is based on legal error. Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008).

The petition for remand "rests on a claim of legal errors by the ALJ -- a claim which precedes any assessment of substantial evidence."[2]  The parties agree on at least three types of legal errors that require remanding this matter,

---

[2] These errors include, but are not limited to, the ALJ's failure to develop fully the record; the ALJ's failure to explain how he resolved inconsistencies in the record; the ALJ's failure to consider the effect of M.R.G.'s "structured setting" in assessing evidence suggesting that his limitations were not marked; the ALJ's failure to set forth some of his findings in sufficient detail to permit review for substantial evidence; and the ALJ's failure to provide sufficient specificity in support of his adverse credibility finding with respect to the plaintiff.

although they each point to different ways in which the error was committed.  First, the ALJ did not fulfill his independent duty to develop the record.  See 20 C.F.R. § 416.912.[3]  Second, the ALJ failed to apply the correct legal standard in deciding whether M.R.G. had a marked limitation in the first and second domain.[4]  Third, the ALJ failed to make sufficiently clear factual findings, including with respect to resolving material evidentiary conflicts, to permit review for substantial evidence.[5]  These reasons are sufficiently supported by the record -- for example, an ALJ hearing lasting only fourteen minutes and the failure to obtain the evaluations of the pediatric specialists -- that, given both parties' request for a remand, remand in this case is appropriate.  See Lin v. U.S.

_____

[3] The Commissioner identifies specifically the ALJ's failure to follow-up and solicit the evaluations of the pediatric neurologist and pediatric psychiatrist and the ALJ's decision to conduct a 14-minute hearing, during which he did not solicit testimony from M.R.G.  Plaintiff identifies the ALJ's failure to read comprehensively two medical tests, the combination of which would have yielded a conclusion that M.R.G. tested two standard deviations below average in his language capacity, thus supporting a conclusion of a marked limitation.

[4] The Commissioner points to the ALJ's failure to discuss language capability in the first domain, and plaintiff points to the ALJ's failure to consider the "structured setting" in both the first and second domains.

[5] The Commissioner acknowledges the conflicts in the evidence in supporting a remand, rather than a reversal, of the ALJ's decision.  Plaintiff points to the ALJ's failure to discuss the evidence supporting a finding of hyperactivity.

<u>Dep't of Justice</u>, 473 F.3d 48, 54-55 (2d Cir. 2007).

The only remaining issue is the scope of the remand. Plaintiff contends that the marked limitation finding with respect to the third domain (interacting and relating with others) should be outside the scope of the remand, as she contends that this finding was supported by substantial evidence, and thus should be final and conclusive in the remand proceedings.  The Commissioner opposes any such limitation on the scope of the remand.

It is a well-established principle of administrative law that this court may, in its discretion, choose to limit the scope of a remand to a government agency.  <u>See Braniff Airways</u>, 379 F.2d 453, 468 (D.C. Cir. 1967) (stating that "the decision whether or not to limit the scope of the proceedings on remand involves the sound discretion of the reviewing court"); <u>see also id.</u> at n.11 ("We have frequently remanded agency cases with specific directions and we have no reservations about our statutory power to do so." (citation omitted)).

In determining how to limit the scope of remand, "the decision . . . is largely dictated by the type of error made by the ALJ or Commissioner."  <u>Seavey v. Barnhart</u>, 276 F.3d 1, 9 (1st Cir. 2001).  "[W]hat instructions should accompany a remand order will turn on the nature of the error at the ALJ

10

proceedings." Id. at 10; see also Sullivan v. Hudson, 490 U.S. 877, 885 (1989) (stating that "the district court's remand order will often include detailed instructions concerning the scope of the remand, the evidence to be adduced, and the legal or factual issues to be addressed").

Applying this test, which turns on the nature of the ALJ's errors, no limitation should be placed on the remand.  The parties agree that the ALJ failed to develop properly the factual record.  This error is generally antecedent to any determination of substantial evidence.  See Moran v. Astrue, 569 F.3d 108, 112-13 (2d Cir. 2009).  This is due, at least in part, to the fact that a record that is not fully developed is flawed and thus does not provide a reliable foundation for fact finding.  Indeed, plaintiff herself argued that the ALJ's legal error "precedes any assessment of substantial evidence" and "prevent[s] the reviewing court from determining whether the ALJ decision was supported by substantial evidence."  Put another way, given the nature of the error here, the plaintiff must take the bitter with the sweet.  Plaintiff cannot gain review of unfavorable findings from a flawed proceeding and yet protect favorable factual determinations from the same proceeding.  Because there is no assurance that any of the ALJ's findings, including the favorable finding under the third domain, was

11

properly reached, a full remand is appropriate.

Moreover, as a practical matter, a full remand is prudent. The record on remand will be expanded at least to include the evidence that the Commissioner agrees was improperly excluded. This includes the opinions of the pediatric neurologist and pediatric psychiatrist, as well as the testimony of M.R.G.  Such evidence would almost certainly bear on whether M.R.G. has a limitation in the third domain (interacting and relating with others).  See 20 C.F.R. § 416.926(a)(i) (listing the types of issues to be considered in making a limitation determination under the third domain).  Thus, it would be sensible to permit the ALJ to consider the new evidence and decide, in the first instance, whether it might warrant reconsidering the marked limitation finding under the third domain.

The plaintiff makes essentially three arguments in response, none of which is persuasive.  First, she contends that the Commissioner agrees that the marked limitation finding is supported by substantial evidence.  As support, she cites principally the amended answer, filed on June 19, 2013, which stated that all of the ALJ's findings were supported by substantial evidence.

This argument, however, ignores the history of this litigation.  At the time that the amended answer was filed, the

Commissioner maintained its ordinary position of opposing a claimant's petition for review.  Subsequently, after plaintiff filed her motion for remand, the Commissioner decided to reverse its position and join the request for a remand.  The Commissioner is therefore not bound by averments made prior to its revised position.

Second, plaintiff notes that, under the law of the case doctrine, the ALJ would, in fact, be permitted to revisit the marked limitation finding under the third domain if the evidence on remand were substantially different.  What plaintiff seeks to do in making this argument is to respond to the concern that the ALJ should be able to consider the new evidence on remand and decide whether to reconsider the prior finding by suggesting that this concern can be accommodated under her preferred approach.

Leaving aside whether this is an accurate statement of the law of the case doctrine, this argument proves too much.  It would suggest that a district court should always strictly limit the scope of its remand.  As laid out above, the scope of a remand turns on the nature of the ALJ's errors, not the law of the case doctrine.

Third, plaintiff suggests that permitting reconsideration of the marked limitation finding would be unfair to M.R.G.  To

13

the contrary, if this finding changes on remand, it would be presumably because the more fully developed factual record supports a change.  To the extent it does not, plaintiff has the right to appeal to correct that error.  Accordingly, if the ALJ were to revise the marked limitation finding on remand, that outcome, while unfortunate for M.R.G., would not be unfair. Rather, it would reflect the just administration of the law.

CONCLUSION

The Commissioner's December 12, 2013 cross-motion for a remand is granted.  Plaintiff's July 23, 2013 motion for a remand with a limitation is granted in part.  The case is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion.  This judgment disposes of the action.  See Sullivan v. Finkelstein, 496 U.S. 617, 624-25 (1990).  The Clerk of Court shall close the case.


        SO ORDERED:

Dated:      New York, New York
            March 31, 2014

                              _____
                                      DENISE COTE
                           United States District Judge